May it please the Court, Ina Lipkin on behalf of the petitioner. This is a matter in which the Board of Appeals agreed with the immigration judge's finding that the petitioner failed to establish that she timely filed her applications for asylum and also denied her claims for withholding of removal. Counsel, I've got a problem here. Let me tell you what it is so you can address it. She missed the one-year deadline for applying for asylum by something approaching two years. We have jurisdiction to review her excuse for missing the deadline, but the IJ made an adverse credibility finding against her with regard to her excuse for missing the deadline. And then we look at the record to see whether there's substantial evidence to support the adverse credibility finding. Her parents don't corroborate the arrest that she claims. Her doctor doesn't corroborate the rape that she claims. And her husband and family don't corroborate her claim that they told her to delay. So what have we got? Okay. According to the Ramadan case that the Court has instructed the parties to look at, the Court has jurisdiction over mixed questions of law and fact. Here the immigration judge conceded that the petitioner testified consistently. However, the credibility, the incredibility finding was related to the documentary evidence that was submitted. The petitioner argues that the minor omissions in those three documents, the father's affidavit, the mother's affidavit, and Dr. Gupta's medical letter, do not diminish the veracity and credibility of her claim. And taking her testimony as true, I'm sorry? Why don't they diminish the veracity of her claim? Because they did not testify in these proceedings. They're just affidavits. The affidavits all reside in India. All that the petitioner could do was request documents. I thought she had a husband and family, and her family was in the D.C. area. Right. But none of those people were percipient witnesses to the harm that she claimed, whereas she claimed an excuse for being late that they told her to be. Don't file yet. Right. But they couldn't explain her mental state, according to the Regulations 284A.5, that a mental condition could excuse a late filing. Excuse me, counsel. Is Respondent here? I think Respondent had requested to go to the end of the calendar, and we are not at the end of the calendar. So I'm going to ask you to go to the end of the calendar. I'm sorry. I'm actually the petitioner's attorney who had requested that, because I had another matter. I'm finished with it, so I'm ready to go. And the Respondent is here. I don't see him. Are you okay? Excuse me. I didn't want to inconvenience anyone. No, I just wanted to make sure, since you had requested to go at the end. I'm with parties there. All right. Thank you. Someone was late in Ford, so I just rolled it to the bottom of the calendar. No problem. All right. Excuse me. Go ahead. No, I couldn't see him. We're fine. Okay. Thanks. You were asking, I think, what weight should be given to the fact that certain witnesses were not present to testify as to her late filing. But again, I was stating that the petitioner testified repeatedly that she was, quote, unquote, under mental upset. And in fact, the letter from Dr. Gupta that she submitted did corroborate this. He did state that she was being treated for mental depression. I think that the proper thing to do is to send this case back and allow the petitioner to better supplement the record with evidence about her mental state, which would go to her ability to prove whether she timely filed for asylum. The heart, her persecution claim that she was sexually assaulted, arrested, beaten, and sexually assaulted by Indian police. That is the gravement of the claim. And my understanding, there was a continuance of some kind and was asked if she had any documentation concerning the sexual assault, beating, et cetera. And she said she did, and she brought back a doctor's report. Am I all right so far? That's right. Dr. Gupta's report. Brought back the report, presented the evidence, and this presumably was the report of the doctor's treatment of her following this incident with Indian police, correct? Yes. And that report says nothing about a sexual assault. Right. Is that correct? That is correct. Wouldn't it be, what would be wrong with the immigration judge inferring a lack of credibility based on that alone? Well, this court has held that an I.I.J. can't make a negative inference based on the in a similar situation, actually, that was a Singh v. Gonzalez case earlier this year, last year, where an immigration judge made a negative inference because a petitioner refused to sign a Canadian immigration waiver. He had a denial, supposedly, from the Canadian immigration authorities. That is Apple's annoyance. Well, I bring it up because this court has found that the I.I.J. can't make a negative inference to sign a waiver without analyzing how that inference relates to the credibility. Similarly, here, the I.I.J. simply stated that he viewed it in a negative light, I forgot what wording he used, her refusal to sign the waiver, but didn't expressly articulate how this failure to sign the waiver really bore on her credibility, given the fact that she testified. She didn't want to sign it, because then everyone back in her village could find out that she was raped and had her case been ultimately denied and she'd have to be removed to India. She would then face further harassment or discrimination as a result. Well, didn't we hold in the Lottie case that an applicant's testimony need not be corroborated in order for the court to deem it credible? Exactly. And here, the I.I.J. himself noted she testified pretty consistently with her application. There were no inconsistencies, nothing that went to the heart of the claim. As I understand that, what that amounts to is, I was raped once. I was raped the second time she testifies about it. Here's the document to prove it, after getting a continuance. My doctor's letter, which doesn't say I was raped, or that I complained of rape. Well, Your Honor, you could also view it in the light that the petitioner submitted the best documentation she could that did not necessarily enhance her claim. She could have simply withheld that document and not given anything to the court. But she gave whatever she was able to give. We don't know exactly what she told the doctor to write. From the beginning, she just made a document request. She can't control what he put in that letter. Did she explain the difference between her testimony and the doctor's report? I think she was, but I think she was unable to explain it. Because again, she just made a request and submitted whatever she got. That's true. Also, in the board's decision, the board, although it affirmed the IJ's decision, the next thing it indicated was, assuming that the petitioner was credible, this testimony alone didn't establish extraordinary circumstances. But if we assume that her testimony is credible, then she did make a request to the IJ's decision. And she did establish reasonable delay in filing because of the quote-unquote mental upset and the very bad advice from family members who discouraged her from filing. The IJ did say she was more or less consistent. But then he went on to find her not credible. But really, if you look at the opinion, he really rested this incredibility finding based on omissions in the documents that the petitioner submitted. So I think that the IJ's decision was more or less credible over their content. Was there any suggestion that a medical document coming from India, in order to protect the privacy of the patient, would not mention rape directly? I don't recall any discussion about what a waiver would entail. I don't think there was any explanation on the record by the government counsel to the petitioner that the IJ's decision was not credible. That would be a very good way to sort of calm her, allay her fears about these facts being leaked to her community. I guess I'll save the rest of the time. I see you now. Thank you, Your Honor. Good morning again, and may it please the Court, my name is Jeffrey Bernstein, and I still represent the Attorney General of the United States. Counsel, is there anything that you wish to add or clarify that has not already been dealt with the brief addressing the arguments that were raised by the appellant? Yes. I would like to make the assertion that the Court has jurisdiction to review this component of the brief. That's in your brief. That's in my brief, but the Court asked us to be prepared to discuss Ramadan. Obviously, our brief was prepared before. I'd like to hear your argument on Ramadan, if you would. I'm happy to present it, Your Honor. The petition does attempt to challenge the determination that she didn't fall within either of the two exceptions to the requirement that an asylum applicant file within a year of arrival in the United States. And this Court has held, generally, that the statute deprives it of jurisdiction to review such determinations. We do recognize that the Court held in Ramadan that it possessed limited jurisdiction to review a determination that the asylum applicant filed within a year of arrival in the United States. We do recognize, however, the determination that an alien failed to prove that he fell within the exception based on changed country conditions, which affected his asylum application, when that determination was based on the application of law to undisputed historical fact. First, the petitioner did not contest the immigration judge's denial of the waiver based on changed country conditions before the Board, and she has failed to exhaust with respect to that question. With respect to the... I'm not following the argument. I thought in Ramadan we said, whoops, we made a mistake here. Actually, we now conclude, after careful consideration, that excuses for late filing of asylum applications are mixed questions of law and fact, and we have jurisdiction to review. The Court was specifically dealing with one of the exceptions. It wasn't dealing with the changed circumstances issue, so the holding is limited to the changed circumstances, changed country conditions. The exceptional circumstances was not entertained by the Court, and it is an entirely separate inquiry, and essentially... What's the difference between changed circumstances and extraordinary circumstances? No, it's changed country conditions. There are two exceptions. All right. Changed country conditions, which materially affect the asylum application, is the exception dealt with by the Court in Ramadan, but the alien has also an opportunity to claim an exception based upon extraordinary circumstances, which led to her... And I'm asking, what's the difference? One is, according to this Court, not a discretionary matter, and exceptional circumstances is a discretionary matter. And that's why Ramadan doesn't control, because the Court in Ramadan recognized that the reason, the suspension clause issue that led it to conclude that changed country conditions had to be reviewed by this Court... Oh, I see. You're saying changed country conditions is something that the Board does not really have final... Well, the Court should be making power over, but extraordinary circumstances that would excuse being late, like I was in a coma at the hospital at the time, that's a discretionary call by the Board, so... Right. Well, except I think the Board does have jurisdiction to deal with that, but that's not discretionary, according to the... I mean, we argued that it was discretionary below, but the Court in Ramadan... That means the two standards are listed within the exact same provision, and they're not differentiated by the statute. So why shouldn't they be treated the same and give us jurisdiction? Because one doesn't involve discretion in the opinion of this Court, and one clearly involves discretion, because exceptional circumstances is, as the Court in Ramadan held... Sorry. Go ahead. Yeah. And I'm searching for my broken glasses, and I apologize. The Court in Ramadan held that review of that extraordinary, I'm sorry, that a discretionary question is a question where the question is subjective or dependent upon the identity or person or entity determining the question, and that is the case with exceptional circumstances, just as it is with extreme hardship. I mean, this Court has always held that extreme hardship is a discretionary determination. And again, just as with exceptional circumstances in this case, it... I take it that you don't want to win with a memorandum disposition. You'd rather lose or win by an opinion on jurisdiction so that the Supreme Court can interpret the Real ID Act. Your Honor, my desire with respect to that, I have no desire with respect to that. I just want the Court to reach the correct conclusion. And there's a second reason why Ramadan does not affect jurisdiction in this case. The Court's test in Ramadan was whether or not the question was subjective or dependent on the identity or person determining the question. And the question was resolved through application of law to undisputed historical fact. And in changed country conditions, you know, the facts that are relied upon in a changed country conditions determination are historical fact. It's based upon generally, you know, a State Department report or another report from an individual, from an agency or individual who has expertise. So those facts tend... In the Dio Viagra case, where we held and we recently reaffirmed it in an en banc that the alien is entitled to an opportunity to explain how the change in country conditions affect him, we held that it's not enough to show that there's a change in the country conditions. There's an interaction between the country conditions and this individual. So I don't know if it's as objective and non-individualized as you're saying. I'm unfamiliar with the Viagra case, Your Honor. But, I mean, it seems to me... Castillo-Viagra. Castillo-Viagra. And I'm happy, you know, when the Court issued its order requesting us to be prepared for Ramadan, I was fully expecting to discuss it. But then if questions arose, you know... I think you've helped us a lot. We thought Ramadan shut you down on jurisdiction, maybe. And you're saying, no, it's distinguishable. Right. And we're happy... But... And we're happy to... Yeah. And I think I've attempted to. But we're happy to submit supplemental briefs on the issue because, you know, perhaps it is necessary to do so. But, again, the government's position is that Ramadan doesn't at all address the second exception, which I've just been discussing, for the several reasons. And even if the second reason doesn't fly, I think it does. But even if it doesn't, the first reason that it's a discretionary determination I think takes it out of Ramadan. Because, again, they were concerned with the suspension clause issue. And as the Court observed in Ramadan, discretionary issues, discretionary determinations, or precluding review of discretionary determinations doesn't offend the suspension clause because aliens and habeas never had the opportunity to contest discretionary determinations. But let me, if the Court doesn't have any more questions on that issue, I'd like to just go to the merits for a minute and 55 seconds. The denial of withholding of removal and torture protection is supported by substantial evidence. There's no evidence compelling a contrary conclusion. The immigration judge, as affirmed by the Board, made an adverse credibility determination. That adverse credibility determination is certainly reasonable. It's based on, it goes to the heart, based on matters that go to the heart of the asylum claim. And there's no evidence which compels contrary conclusions. Number one, as the I.J. I covered that very well in your briefs, that argument. I just have a few. Okay. In one minute, 11 seconds. Okay. I'm happy to rely on the brief, because I did want to, except to make the point that, you know, the country conditions report in this case really established that there is no problem at all for Sikhs anymore, and certainly not in 1999, because the country report, the 1996 addendum to the 1996 country report indicated that really problems, the terrorist movement really ended in 1994, and that as of 1997, former terrorists were returning to the country. And certainly if former terrorists felt safe enough to return to the country in 1997, then that really cast a grave credibility doubt upon a story that in 1999, the Indian police came to their house, came to this woman's, the alien's house, and persecuted her because her brother, they thought their brother might have had some ties to terrorists. Finally, I guess, the immigration judge did properly determine that even if she were credible, and I know I'm not. Thank you, counsel. Thank you, Your Honor. You would have loved what I was about to say. Sorry about that. We've got to stay awake and alive for Ford Motor Company v. Doherty, too. Okay. Did you have rebuttal time left? I don't think I did. She didn't. She was out of time. Is that right? She was out. Yeah. Thank you. CORE v. McKasey is submitted to Ford Motor Company v. Doherty. We'll hear now.
judges: D.W. Nelson, Kleinfeld, Hawkins